## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| **MARK KISCIRAS**, on behalf of himself and all others similarly situated, | Civil Action No. |
| Plaintiff, | **CLASS ACTION COMPLAINT** |
| -against- | |
| **EXPERIAN INFORMATION SOLUTIONS, INC.,** | |
| Defendant. | |

Plaintiffs Mark Kisciras ("Plaintiff"), on behalf of himself and all others similarly situated, files this Class Action Complaint against Experian Information Solutions, Inc. ("Experian" or "Defendant"). Plaintiff alleges, based on personal knowledge as to Defendant's actions and upon information and belief as to all other matters, as follows:

### I. NATURE OF THE CASE

1. Plaintiff brings this action against Defendant Experian for violations of the federal Fair Credit Reporting Act ("FCRA"), 15 U.S.C. §§ 1681, *et seq*.

2. Defendant Experian is a credit reporting agency ("CRA") that has been wrongfully reporting that Plaintiff, as well as hundreds (if not thousands) of others, are obligated on debts in collection supposedly held by an Investigative Recovery Services LLC ("Investigative Recovery"). However, Investigative Recovery Services LLC is in fact a fraudulent phishing scam engaged in the practice of targeting individuals as owing non-existent or long outdated pay-day loans and other false debts, threatening the necessity of immediate settlement, and falsely reporting these debts to Experian.

3. Despite countless aspects of Investigative Recovery's practices which would evidence that the information they furnish to Experian is completely fabricated and unreliable, Experian nonetheless fails to have adequate policies and procedures in place to ensure that it prevents the reporting of the falsified and inaccurate debts reported by this furnisher.

4. Plaintiff brings nationwide class claims against Experian for 1) knowingly and recklessly providing consumer information of debts in collection from a fraudulent and illegally operating furnisher, 2) failing to legitimately verify the data provided by this furnisher upon receipt of consumers' disputes, and 3) recklessly failing to maintain reasonable policies and procedures to address fraudulent furnisher activity.

## II. PARTIES

5. Plaintiff Mark Kisciras is a "consumer" as protected and governed by the FCRA, and resides in Lanoka Harbor, New Jersey.

6. Defendant Experian is one of the largest credit reporting agencies in the United States and is engaged in the business of assembling and disseminating credit reports concerning hundreds of millions of consumers. Experian is a "consumer reporting agency" as defined by 15 U.S.C. § 1681a(f) of the FCRA, and is regularly engaged in the business of assembling, evaluating, and dispersing information concerning consumers for the purpose of furnishing consumer reports, as defined in 15 U.S.C. § 1681a(d)(1) of the FCRA, to third parties.

7. Experian Information Solutions, Inc. is a corporation incorporated in the State of Florida, with its principal place of business located in Costa Mesa, California.

## III. JURISDICTION AND VENUE

8. The Court has federal question jurisdiction under the FCRA, 15 U.S.C. § 1681p, and 28 U.S.C. § 1331.

9. Venue is proper in this Court because Plaintiff Kisciras resides in this District and was harmed in this District. *See,* 28 U.S.C. § 1391(b)(2). Defendant further regularly conducts business in this District.

## IV. FACTUAL ALLEGATIONS

**EXPERIAN'S FURNISHER POLICIES**

10. Defendant, one the of the largest providers of consumer information in the country, relies on "furnishers" of consumer information, such as credit card issuers, auto dealers, lenders, and other creditors, to provide them the data that is utilized to generate the consumer reports they sell and distribute. Experian promotes the reporting of consumer data as a means for "promoting a healthy credit eco-system for all," claiming doing so can "[r]educe risky lending decisions", "[i]mprove your customers' experience", "[m]inimize delinquencies and collections", and, notably, "[i]ncrease on-time payments and collect bad debt – ***When customers know that their lenders report, they are more likely to pay on time. You can also encourage late payers to resolve outstanding debts before delinquency affects their credit***."[1] (emphasis added).

11. In order to become a furnisher of consumer information to Defendant, Experian requires a company submit a Credentialing Application, a Data Release Agreement, and a Subscriber Questionnaire Document. Once approved, upon information and belief, the furnisher pays Experian regular fees in order to report consumer data that would be included on individual consumer's credit reports.

12. Upon information and belief, Experian claims that before accepting information from a particular furnisher, it conducts an investigation to determine whether the furnisher is a

---

[1] See Winning with data reporting, https://www.experian.com/consumer-information/reporting-to-credit-agencies, *last visited on November 11, 2022*

source of reliable information, for example through an audit of the furnisher's data. Experian purports to further conduct periodic audits of the furnisher's data to assure its continuing reliability.

13. If a consumer disputes the data provided by a furnisher to Experian, Defendant purports to contact the furnisher to verify the information. If that information is not verified, Defendant purports to place a flag on the trade line to prevent it from being presented on a consumer's credit report.

14. However, upon information and belief, Experian fails to have reasonable policies and procedures for addressing a furnisher that is repeatedly providing inaccurate or false consumer information. Upon information and belief, even if the information from a specific furnisher is repeatedly challenged by numerous consumers as completely fabricated, Experian continues to allow that furnisher to provide consumer information, assumptively for the purpose of collecting its data reporting fees.

**INVESTIGATIVE RECOVERY SERVICES LLC**

15. As far back as 2010, the Federal Bureau of Investigation's Internet Crime Complaint Center has warned about extortion scams related to fraudulent payday loans. These scammers "claim the victim is delinquent in a payday loan and must repay the loan to avoid legal consequences,"[2] repeatedly contacting victims via phone, email and mail claiming to be collecting debts from various internet check-cashing services or other false companies. Generally, these fraudulent debts are completely fabricated, but occasionally relate to outstanding debts that have passed any statute of limitations or have been previously repaid. As the FBI release states, "[h]ow the fraudsters obtained the personal information varies," but whatever means used, the fraudsters

---

[2] See https://archives.fbi.gov/archives/news/pressrel/press-releases/paydayloanscam_120710, *last visited on November 11, 2022.*

often have accurate data about victims such as addresses, phone numbers, bank account numbers, and even Social Security numbers. *Id*.

16. Upon information and belief, Investigative Recovery Services LLC ("Investigative Recovery"), a/k/a Investigate Recovery Inc. a/k/a Investigative-Recovery LLC a/k/a Asset Investigative Recovery Inc. is an entity conducting 'business' as one of these scammers.

17. Operating out of the state of Florida, Investigative Recovery has taken multiple corporate forms since 2011 (as noted above). These entities are repeatedly dissolved for failure to file annual reports and report various different principal addresses, occasionally only existing for as short as one month before being voluntarily dissolved. The one consistency between these various entity forms is the presence of a Michael Jagroo, listed variably as President, Manager, and often the Registered Agent of these entities.

18. The longest standing (despite two previous administrative dissolutions) of these entities is Investigative Recovery Services LLC, reinstated on August 7, 2022. The principal address listed for Investigative Recovery Services LLC is 9844 Sandlefoot Blvd, Suite C, Boca Raton, Florida 33426, which has been the constant principal address filed since 2018. This address conflicts with 1700 Banks Road, Margate, Florida (the "Margate Address"), the address listed for contact on all the debts reported by Experian that were furnished by Investigative Recovery. In fact, that address has only been listed on the State of Florida records as being connected with "Investigative-Recovery LLC", which only existed from 02/23/2022-03/27/2022 before being dissolved, and is a strip mall with various suites.

19. Investigative Recovery Services LLC somehow managed to become licensed as a consumer collection agency with Florida's Office of Financial Regulation from 01/02/2019-12/31/2019 and from 10/28/2020-12/31/2021. Both of these licenses list the Boca Raton address

as the business' main address, with a phone number of (888) 325-6050. ***As of 01/01/2022, Investigative Recovery is not licensed as a consumer collection agency in the state of Florida***.

20. Despite the sparing but seeming compliance with regulatory obligations by Investigative Recovery, a review of the company's Better Business Bureau's complaint section illuminates the widespread fraud it perpetrates. Investigative Recovery Services LLC is not BBB accredited and holds an "F" rating, with 8 pages of complaints all mirroring the same storyline, most relating to the last few years.

21. A few such examples illustrate Investigative Recovery's fraudulent practices. See for instance a complaint written 07/05/2022 which reads:

> ***This company has placed a fraudulent payday loan on my Experian credit report***. I have called them and asked the account be removed. ***I have asked for confirmation of the original debt which they can't provide because it doesn't exist***. They have been calling me nonstop. I called back today and reiterated this is a fraudulent claim and needs to be removed. I was told the manager will come in this evening and review my claim. This is crazy, I filed a claim with the *** and with Experian, now with BBB. I need this removed and corrected immediately. I'm going to seek legal council if I can't get this removed this month. ***Experian needs to do a better job vetting [their] credit information***.

(emphasis added).[3]

22. Another complaint from 06/22/2022 states:

> On 6/15/2022 I checked my Experian credit report and found a collections account from Investigative Recovery Services in the amount of $630. This collection is showing that I took a loan on 10/9/2020 and ***the original creditor is showing as Advance Cash Loan Services***. ***I disputed this collection through Experian however Investigative Recovery Services told Experian that the information is correct therefore the collections account remains on my credit report. I did not take out this loan nor have I EVER interacted with either Advance Cash Loan Services or Investigative Recovery Services.*** This company needs to be looked into and criminal charges pursued based on the fraud that is occurring. ***This is obviously a scam and needs to be stopped***. As this collection is NOT mine, it needs to be removed from my credit report.

---

[3] See https://www.bbb.org/us/fl/boca-raton/profile/collections-agencies/investigative-recovery-services-llc-0633-90433897/complaints?page=1, *last visited on November 11, 2022*.

(emphasis added).[4]

23. These stories are repeated across the 8 pages of complaints, spanning multiple years, and include at least 15 references to an original creditor called "Advanced Cash Loan Services" (or another iteration therein), and over 20 references to various other pay day lending companies.

24. Upon information and belief, Investigative Recovery fails to provide any directly disputing consumers with any documentation or proof that would verify that the debt is accurate and owed to Investigative Recovery. This is because Investigative Recovery's collection practices are purely derived from fraud. Numerous consumers state that upon contacting the listed original creditor, they are told that no debt was owed, the tradeline is completely fabricated and that Investigative Recovery is a 'scam', even encouraging that the victims seek criminal action.

25. Most concerning, amongst the various false debts and allegations of the tactics used by Investigative Recovery that would undoubtedly violate the Fair Debt Collection Practices Act, such as harassing phone calls, threats of legal action and even threats of violence, an additional disturbing theme emerges. Countless of these complaints outline that on a consistent basis, upon disputing these fraudulent debts with Defendant, *Experian consistently returns the results of their investigations as verified as accurate by the furnisher*.

26. Upon information and belief, Investigative Recovery uses its capacity to report this false data to Experian to maliciously coerce and extort its targets into agreeing to 'settle' these fraudulent debts by damaging their credit scores and interfering with their ability to resolve their disputes.

---

[4] *Id*.

27. In fact, Investigate Recovery's "debt collection" letters specifically leverage its furnishing power with Experian to pressure its victims. Highlighted in yellow and bolded in red, emphasizing the underlying threat, the letters emphasize that upon settling the fraudulent debt, "your account will be considered paid in full and ***reported to Experian as such for complete removal to have you[r] credit score restored.***"

28. Based on the dates of these Better Business Bureau complaints and the information provided by these consumers, Experian has been on notice of Investigative Recovery's fraudulent practices for at least two years. Nonetheless, Experian willfully and with reckless disregard continues to allow Investigative Recovery to furnish consumer data to be included in consumers' reports and consistently verifies these debts as accurate despite countless consumers' disputes. Upon information and belief, this is because Experian has blatantly unreasonable policies and procedures in place to address furnishers who persistently provide not only inaccurate, but patently false and fraudulent information, to Defendant.

29. Even were these debts supposedly owed to Investigative Recovery legitimate, it has not been licensed to collect consumer debts since the start of 2022. Again, despite this reality, Defendant continues to consistently report debts in collection reported by Investigative Recovery and continues to verify these tradelines as accurate after consumers dispute them, in effect enabling the malicious efforts of these scammers, and in blatant violation of the FCRA.

**PLAINTIFF'S EXPERIENCE**

30. On or about November 7, 2021, Plaintiff Kisciras discovered that a collection was placed on his Experian credit report by an 'Investigative Recovery' (contact listed as the Margate Address) with an original creditor listed as Advanced Cash Loan Services. Plaintiff has had no relationship with any Advanced Cash Loan Services, nor has ever been notified of any collection

account being transferred to any Investigative Recovery, and was understandably confused and frustrated as this collection caused his credit score to decrease by 59 points.

31. On the same day, Plaintiff Kisciras disputed the accuracy of this information with Experian, stating that he had not opened any new accounts in the prior four years and that this reported collection appeared to be fraud.

32. On November 30, 2021, Experian responded to Plaintiff Kisciras's dispute, verifying the collections account as accurate, as certified by the furnisher Investigative Recovery.

33. On December 6, 2021, Plaintiff Kisciras sent another dispute letter to Experian stating that the account was fraudulent, that he had not applied for any credit, and referencing the information about Investigative Recovery's fraudulent practices he discovered on the Better Business Bureau website (as discussed above).

34. On December 29, 2021, Plaintiff Kisciras further sent a certified letter to Investigative Recovery to the Margate Address, as was listed on his credit report, asking for a validation of his supposed debt. The letter to Investigative Recovery was returned as "Return to Sender – VACANT – Unable to Forward." On January 15, 2022, Plaintiff sent another dispute letter to Experian outlining the above and including a copy of the certified return.

35. On February 18, 2022, Experian sent a follow-up to the reinvestigation requested by Plaintiff Kisciras. The results of Defendant's 'reinvestigation' were that the "Outcome remains." To Plaintiff's complete frustration and dismay, Defendant again reported the information had been certified as accurate by the furnisher Investigative Recovery.

36. In an attempt to meet this fraud at its head, Plaintiff Kisciras called the (888) number associated with Investigative Recovery, and spoke to a "Sean" purporting to represent the collector. Plaintiff requested any form of verification of this alleged debt. "Sean" said there was

no contract or documents, nor did he mention the original creditor listed on Plaintiff's credit report, Advanced Cash Loan Services. Though "Sean" ended the call claiming he would put through a request for verification documentation, to this day Plaintiff has never received any documentation supporting the verification of this alleged debt.

37. Feeling completely helpless due to Defendant's previous responses and his understanding of Investigative Recovery's fraudulent practices, Plaintiff Kisciras filed a complaint with the CFPB and FTC explaining the fraudulent collections reported on his account and his disputes with Experian.

38. Only after this step did Plaintiff Kisciras finally receive dispute results from Experian on April 21, 2022, stating that the Investigative Recovery account had been removed from his credit report.

39. By allowing a scammer like Investigative Recovery to repeatedly and on an ongoing basis not only furnish, but supposedly 'verify', collections accounts which are completely fraudulent and fabricated, Experian fails to have reasonable policies and procedures in place to ensure the maximum possible accuracy of the information they report, in violation of the FCRA.

40. Compounding this failure, Experian has willfully, recklessly, and/or negligently failed to develop an effective system to allow consumers to remove inaccurate information from their credit reports, as evidenced by the multitude of individuals who have had these Investigative Recovery fraudulent debts verified after disputing them with Defendant.

41. As the result of its violations of the FCRA, Defendant is liable to Plaintiff for statutory and punitive damages, as well as attorneys' fees and costs. 15 U.S.C. § 1681n.

42. Defendant's conduct and actions were willful. The language of section 1681e(b) is pellucidly clear and there is no reasonable reading of the statute that could support Defendant's actions.

43. Defendant received multiple notices that Investigative Recovery was continuously reporting, and verifying, alleged debts that were fraudulent and inaccurate. Nonetheless, Defendant willfully, deliberately and intentionally reported and maintained the tradelines furnished by Investigative Recovery on Plaintiffs' and the proposed classes' credit reports, and often continued to do so after individual consumers disputed the accuracy thereof.

44. Defendant has further been sued for this exact conduct connected to Investigative Recovery in the past and was thereby put on notice that it was violating the FCRA by continuing to report and verify as accurate the information furnished by Investigative Recovery.

45. Upon information and belief, Defendant does not maintain reasonable procedures to assure it reports consumer information with maximum possible accuracy because it would be more expensive to independently verify the accuracy of the information provided by its furnishers that it includes in its consumer reports.

46. It is wholly unreasonable for Defendant to maintain procedures that it knows often lead to inaccurate consumer reporting with grave consequences.

47. Despite knowing that its procedures are unreasonable, Defendant recklessly, knowingly, and/or negligently fails to employ procedures that assure that maximum possible accuracy of consumer information compiled and published in its consumer reports.

48. Upon information and belief, Defendant does not independently investigate the furnishers, or the information provided by its furnishers, before including it in consumers' reports.

49. The injuries suffered by Plaintiffs and the Class as a direct result of Defendant's erroneous reporting are the type of injuries that the FCRA was enacted to prevent.

50. Defendant knows that its services are used to make significant consumer decisions.

51. Upon information and belief, Defendant knew or should have known that lenders and other financial institutions make significant decisions based on the information contained in its reports.

52. Upon information and belief, Defendant knew or should have known the negative impact that reporting fraudulent collections accounts reported by a phishing scam furnisher like Investigative Recovery was likely to have on consumers.

53. As a result of Defendant's conduct, the consumer members of the Classes such as Plaintiff have suffered concrete injuries. Plaintiff and the Class members have had fraudulent and inaccurate credit information defamatorily disseminated to third parties, and had their credit scores significantly damaged by these fraudulent collections accounts, resulting in less-preferable credit terms and even denial for loans and other sources of credit. Plaintiff and the Class members have further had their time wasted and expenses incurred in having to dispute these blatant inaccuracies, sometimes repeatedly, due to Defendant's failures. Additionally, Plaintiff and the Class members have suffered the resulting frustration, anxiety, and emotional distress associated with the reporting of these fraudulent accounts which has subjected them to abusive credit reporting practices from which they have a substantive right to be free.

54. These injuries are particularized and concrete, but difficult to quantify, rendering the recovery of class statutory damages ideal and appropriate.

55. Defendant's violations of the FCRA were willful. Accordingly, Plaintiff and the proposed Class members are entitled to statutory, actual, and punitive damages under 15 U.S.C. § 1681n.

56. Additionally, Defendant's violations of the FCRA were negligent. Accordingly, Plaintiff and the proposed Class members are entitled to statutory and actual damages under 15 U.S.C. § 1781o.

57. In any event, Defendant is liable for Plaintiff's reasonable attorneys' fees and costs, pursuant to 15 U.S.C. §§ 1681n and 1681o.

58. All conditions precedent to the filing of this action have been satisfied.

## V. CLASS ACTION ALLEGATIONS

59. Pursuant to Federal Rule of Civil Procedure 23, Plaintiff brings this action for themselves and on behalf of the following Classes:

**Accuracy Class:** All natural persons whose consumer report was furnished by Defendant, after the date beginning five years prior to the filing of this Complaint and through the time of judgment, containing a collections account reported by Investigative Recovery, Investigative Recovery Services, Investigative Recovery Services LLC, Asset Investigative Recovery, Investigative Recovery Inc., or another such name taken by Investigative Recovery.

**Reinvestigation Class:** All natural persons: a) whose consumer report was furnished by Defendant, after the date beginning two years prior to the filing of this Complaint and through the time of judgment, containing a collections account reported by Investigative Recovery, Investigative Recovery Services, Investigative Recovery Services LLC, Asset Investigative Recovery, Investigative Recovery Inc., or another such name taken by Investigative Recovery; and b) such collections account was disputed with Defendant; and c) Defendant validated such collections account as verified by the furnisher.

60. Plaintiff reserves the right to amend the definition of the Classes based on discovery or legal developments.

61. Specifically excluded from the Classes are: (a) all federal court judges who preside over this case and their spouses; (b) all persons who elect to exclude themselves from the Classes; (c) all persons who have previously executed and delivered to Defendant releases of all their claims; and (d) Defendant's employees, officers, directors, agents, and representatives and their family members.

62. **Numerosity.** The Classes are so numerous that joinder of all members is impracticable. At this time, Plaintiff does not know the exact size of the Classes. Based on information and belief, the Classes are comprised of at least hundreds, if not thousands, of members who are geographically dispersed throughout the country so as to render joinder of all Class members impracticable. The names and addresses of the Class members are identifiable through documents maintained by Defendant, and the Class members may be notified of the pendency of this action by published and/or mailed notice.

63. **Commonality.** Common questions of law and fact exist as to all members of the Classes and predominate over the questions affecting only individual members. The primary common legal and factual questions are:

   a) Whether the Defendant willfully and/or negligently violated the FCRA by failing to follow reasonable procedures in preparing and selling reports with collections accounts reported by Investigative Recovery;

   b) Whether the Defendant willfully and/or negligently violated the FCRA by failing to follow reasonable procedures in verifying collections accounts reported by Investigative Recovery after consumers' disputes;

c) Whether the Defendant willfully and/or negligently violated the FCRA by failing to follow reasonable procedures in continuing to allow Investigative Recovery to report fraudulent information included on consumers' reports;

d) Whether the Defendant willfully and/or negligently violated the FCRA by failing to reinvestigate disputed collections accounts reported by Investigative Recovery;

e) Whether Plaintiff and the Classes have been injured by Defendant's conduct;

f) Whether Plaintiff and the Classes have sustained damages and are entitled to restitution as a result of Defendant's wrongdoing and if so, the proper measure and appropriate formula to be applied in determining such damages and restitution; and

g) Whether Plaintiff and the Classes are entitled to declaratory and/or injunctive relief.

64. **Typicality**. Plaintiffs' claims are typical of the claims of each Class member. Plaintiffs have the same claims for statutory and punitive damages that they seek for absent class members.

65. **Adequacy.** Plaintiffs will fairly and adequately protect the interests of the Classes. Plaintiffs' interests coincide with, and are not antagonistic to, other Class members' interests. Additionally, Plaintiffs have retained counsel experienced and competent in complex consumer and class-action litigation. Plaintiffs' counsel have prosecuted complex consumer class actions across the country.

66. **Predominance and Superiority.** Questions of law and fact common to the Class members predominate over questions affecting only individual members, and a class action is superior to other available methods for fair and efficient adjudication of the controversy. The statutory and punitive damages sought by each member are such that individual prosecution would

prove burdensome and expensive given the complex and extensive litigation necessitated by Defendant's conduct. It would be virtually impossible for the Class members individually to redress effectively the wrongs done to them. Even if the Class members themselves could afford such individual litigation, it would be an unnecessary burden on the courts. Furthermore, individualized litigation presents a potential for inconsistent or contradictory judgments and increases the delay and expense to all parties and to the court system presented by the complex legal and factual issues raised by Defendant's conduct. By contrast, the class action device will result in substantial benefits to the litigants and the Court by allowing the Court to resolve numerous individual claims based upon a single set of proof in a unified proceeding.

67. Furthermore, individualized litigation presents a potential for inconsistent or contradictory judgments and increases the delay and expense to all parties and to the court system presented by the complex legal and factual issues raised by Defendant's conduct. By contrast, the class action device will result in substantial benefits to the litigants and the Court by allowing the Court to resolve numerous individual claims based upon a single set of proof in just one case.

### VI. CAUSES OF ACTION

**COUNT I**
**VIOLATIONS OF THE FAIR CREDIT REPORTING ACT**
**15 U.S.C. § 1681e(b)**

68. Plaintiff incorporates by reference those paragraphs set out above as though fully set forth herein.

69. Plaintiff brings this claim of behalf of himself and the Accuracy Class.

70. At all times pertinent hereto, Defendant Experian is a "consumer reporting agency" ("CRA") as defined by sections 1681a of the FCRA.

71. Plaintiff is a "consumer" as defined by section 1681a(c) of the FCRA.

72. The above-mentioned reports are a "consumer report" as defined by section 1681a(d) of the FCRA.

73. Section 1681e(b) of the FCRA requires that, "Whenever a consumer reporting agency prepares a consumer report it shall follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates."

74. Were Experian to follow procedures to assure maximum possible accuracy of the credit reports it prepares concerning Plaintiff and the Accuracy Class members, it would not have included collections account reported by Investigative Recovery that it knew, or should have known, were fraudulent or uncollectible.

75. Furthermore, were Experian to follow procedures to assure maximum possible accuracy of the credit reports it prepares concerning Plaintiff and the Accuracy Class members, it would have prevented such information furnished by Investigative Recovery from being reported on the credit reports of Plaintiff and the Accuracy Class members.

76. As a direct and proximate result of Experian's willful and/or negligent failure to follow procedures to assure maximum possible accuracy of the information it reports, Plaintiff and the Accuracy Class have been harmed. Plaintiff's credit score has been greatly lowered as a result of Defendant's actions, as well as suffering the denial of credit, wasted time, stress, anxiety, and emotional distress.

77. Pursuant to section 1681n and 1681o of the FCRA, Defendant Experian is liable for willfully and negligently violating section 1681e(b).

## COUNT II
## VIOLATIONS OF THE FAIR CREDIT REPORTING ACT
## 15 U.S.C. § 1681i

78. Plaintiff incorporates by reference those paragraphs set out above as though fully set forth herein.

79. Plaintiff brings this claim on behalf of himself and the Reinvestigation Class.

80. The FCRA provides that if a CRA conducts an investigation of disputed information and confirms that the information is, in fact, inaccurate, or is unable to verify the accuracy of the disputed information, the CRA is required to delete that information from the consumer's file. See 15 U.S.C. § 1681i(a)(5)(A).

81. Plaintiff (as outlined above) and the Reinvestigation Class members initiated disputes with Experian requesting that they correct and/or delete the patently inaccurate and damaging information being furnished by Investigative Recovery.

82. However, Experian never adequately investigated Plaintiff's and the Reinvestigation Class members disputes, as required by the FCRA.

83. Instead, Experian, after either conducting no investigation or failing to conduct a reasonable investigation, continued to report this inaccurate information on Plaintiff's and the Reinvestigation Class members' credit reports, something that any basic investigation would have prevented.

84. As a direct and proximate result of Experian's willful and/or negligent failure to follow conduct a reasonable investigation in response to Plaintiff's and the Reinvestigation Class members' disputes, Plaintiff and the Class have been harmed, as explained above.

85. Pursuant to section 1681n and 1681o of the FCRA, Defendant Experian is liable for willfully and negligently violating section 1681i.

## VII. PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff and the Class pray for relief as follows:

A. That an order be entered certifying the proposed Classes under Rule 23 of the Federal Rules of Civil Procedure and appointing Plaintiffs and their counsel to represent the Classes;

B. That judgment be entered in favor of Plaintiff and the Accuracy Class against Defendant Experian for statutory damages and punitive damages for violation of 15 U.S.C. § 1681e(b), pursuant to 15 U.S.C. § 1681n;

C. That judgment be entered in favor of Plaintiff and the Reinvestigation Class against Defendant Experian for statutory damages and punitive damages for violation of 15 U.S.C. § 1681i, pursuant to 15 U.S.C. § 1681n;

D. That the Court award costs and reasonable attorneys' fees, pursuant to 15 U.S.C. §§ 1681n and 1681o;

E. That the Court issue a declaration that Defendant's conduct alleged herein is unlawful, as set forth more fully above;

F. That the Court grant equitable relief, enjoining the Defendant from engaging in the unjust and unlawful conduct alleged herein; and

G. That the Court grant such other and further relief as may be just and proper.

## VIII. TRIAL BY JURY

Plaintiffs hereby request a trial by jury on those causes of action where a trial by jury is allowed by law.

Dated: February 10, 2023

/s/ Yitzchak Zelman
Yitzchak Zelman, Esq.

Marcus Zelman, LLC
701 Cookman Avenue, Suite 300
Asbury Park, New Jersey 07712
Phone: (732) 695-3282

*Attorneys for Plaintiff and the Proposed Classes*